UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RENZER BELL,

                Plaintiff,

   -against-

GEORGE ANTHONY STEPHENS AND
ANDY'S CAR CO., INC.,

                Defendants.

No. 05 Civ. 7182 (LTS)(RLE)

---

LAURA TAYLOR SWAIN, DISTRICT JUDGE:

## MEMORANDUM OPINION AND ORDER

      This action arises from arrangements and communications between pro se Plaintiff Renzer Bell ("Plaintiff" or "Bell") and Defendants George Anthony Stephens and Stephens' business, Andy's Car Company, Incorporated ("Stephens" and "Andy's," respectively and, collectively, "Defendants") concerning the acquisition of an exotic car. Bell alleges that Defendants breached or anticipatorily repudiated a contract to take delivery of a car he had located at Defendants' behest for one of Defendants' clients. He seeks to recover $75,080 in liquidated damages, among other things, pursuant to a signed "Assignment of Contract for Sale - Motor Vehicle" (the "Assignment"). Defendant Andy's counterclaims, asserting that Plaintiff breached an obligation to procure delivery of the car by a certain date and seeking to recover $30,000 in damages it claims it incurred by reason of losing the opportunity to sell the car at a profit to its client. The Court has jurisdiction of this action pursuant 28 U.S.C. § 1332(a).

      Now before the Court are (1) Plaintiff's motion pursuant to Federal Rule of Civil

Procedure 12(c) for judgment on the pleadings dismissing the counterclaim, and (2) Defendants' cross-motions (a) pursuant Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56, (b) pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint as against Stephens, the individual Defendant, (c) for partial summary judgment pursuant to Rule 56, limiting Plaintiff's damages, if any, to direct damages and loss of profits, and (d) for summary judgment pursuant to Rule 56 on Defendant Andy's counterclaim. The Court has reviewed thoroughly all of the parties' papers in support of and in opposition to these motions. For the following reasons, Defendants' motion to dismiss the Complaint as against Stephens is granted, and all of the other motions are denied.

Procedural Posture of Motions

Because Plaintiff's Rule 12(c) motion was interposed prior to his filing of an answer to Defendants' counterclaim, the Court construes the motion as one made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both parties have proffered, and the Court has considered, factual material outside of the pleadings in connection with these motions. Accordingly, all of the pending motions will be treated as ones pursuant to Federal Rule of Civil Procedure 56.[1] See Fed. R. Civ. P. 12(b), 12(c).

---

[1] In his papers in opposition to Defendants' applications for summary judgment, Plaintiff argues that he needs discovery in order to respond to the motions, and seeks depositions of Defendants' affiants as well as certain documentary discovery. In light of the Court's disposition of the motions, it is not necessary for the undersigned to address Plaintiff's discovery applications. Discovery in the action will proceed under the continued general pretrial supervision of Magistrate Judge Ellis.

## BACKGROUND

It is undisputed that Bell and "Andy's Car Co., Inc. by George Stephens" executed the Assignment on or about June 30, 2005. The Assignment recites that, for consideration of $2,000, Bell sells, assigns and transfers to George Anthony Stephens and/or Andy's Car Company, Incorporated (referred to collectively in the document as "Buyer"), "its right to purchase the following described motor vehicle":

    Make:   Ford
    Model:  GT
    Year:   2005
    VIN [to be provided by the car dealer]

(Exh. A to Complaint.) The Assignment further provides, among other things, that Buyer would pay to the "car dealer" the sales price of $173,000 for the vehicle within two days of the dealer's notification to Bell that the vehicle was available for pickup and/or delivery (id. ¶ 4), and that Bell would get the benefit of any discount on the price from the stated amount (id. ¶ 5). The Assignment does not specify any delivery date or deadline, nor does it specify the color of the vehicle, the identity and address of the dealer from which the car was to be acquired, or the VIN of the vehicle. Paragraph 8 of the Assignment recites that it

> contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written. The terms of this Agreement can not be modified/amended/superseded by any other representations whether oral or written.

Paragraph 11 of the Assignment provides that

> In the event the Buyer does not comply with the terms and conditions set forth in the [payment provisions of the document] . . ., Buyer agrees and warrants that Buyer is required to make a payment to [Bell] of Seventy-Five Thousand and Eighty Dollars as partial liquidated damages for said noncompliance . . . .

Defendants make the following proffers as to the background of the transaction.

Stephens is the sole owner and president of Andy's Car Co., a car dealer incorporated and doing business in the state of North Carolina. On June 18, 2005, Stephens' neighbor, William McKay[2] ("McKay"), contacted Stephens about purchasing a new 2005 Red Ford GT automobile, "loaded" with all four available factory options. Stephens, as president of Andy's, agreed to search for the specified automobile and, upon finding one, offer it to McKay for a sales price in the range of $200,000 to $210,000. McKay agreed on the condition that the car be purchased no later than July 6, 2005 and delivered to him immediately thereafter. Upon referral by an intermediary wholesale car dealer who knew that Stephens was looking for a Ford GT, Plaintiff Bell telephoned Stephens on June 30, 2005. Stephens informed Bell that his client wanted a new 2005 Red Ford GT, "loaded" with all four available factory options.

Defendants further claim that Stephens informed Bell that his client would only buy the car if it was available for purchase by July 6, 2005. Bell denies that he made "the alleged oral representations to the defendants promising delivery/availability/production/closing on or before July 6, 2005." (Aff. in Opp. to Cross-Mot. for Sum. J. ¶ 49.) He denies knowledge or information sufficient to form a belief as to Defendants' alleged dealings with McKay and the intermediary dealer but does not, however, appear to dispute the assertions that Bell told Stephens that he had a car that met his specifications available for purchase at a Ford franchised dealer ("Ford dealer") in South Florida and that Bell informed Stephens that he did not own the car and that the purchase price was $173,000, directly payable by Andy's to the Ford dealer. Nor is it disputed that the execution of the Assignment arose from the communications between Bell and

---

[2]  In their Statement of Material Facts, Defendants refer to the client as "McKay," but in their answer he is referred to as "McCoy."

Stephens.

Defendants claim that, between July 1 and July 6, 2005, they tried repeatedly to contact Plaintiff by phone, to no avail, to obtain the car's VIN and the Ford dealer's information. (Defs.' Statement of Material Facts ¶ 9.) Plaintiff disputes Defendants' claim that any such attempts were made. (Pl.'s Aff. In Opp'n to Cross-Mot. Summ. J. ¶ 6.) On July 12, 2005, Plaintiff claims, he phoned Stephens and informed him that he had a car available for pick-up. Defendants claim that Plaintiff's statement regarding the availability of the car was more ambiguous. It is undisputed that Defendants neither took delivery of the car allegedly proffered by Plaintiff nor responded to Bell's written demands for payment or for "assurances of performance." This litigation ensued.

## DISCUSSION

### Summary Judgment Standard

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). "Conclusory allegations, conjecture and speculation are insufficient to create a genuine issue of fact." Kerzer v. Kingly Manufacturing, 156 F.3d 396, 400 (2d Cir. 1998). The evidence of the nonmoving party is, however, "to be believed, and all

justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. When considering cross-motions for summary judgment, the standard to be applied "is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other." Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004)(quoting Aviall, Inc. v. Ryder Sys., Inc., 913 F. Supp. 826, 828 (S.D.N.Y. 1996)). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 314 (2d Cir. 1981).

### Defendants' Motion For Summary Judgment Dismissing the Complaint; Plaintiff's Motion to Dismiss the Counterclaim

Defendants argue that they are entitled as a matter of law to judgment dismissing the Complaint because the Assignment was not an enforceable contract, but rather a non-binding "agreement to agree" in the future. They insist that the absence of key terms from the Assignment such as the color of the car, its specific options, the date of shipping, and the dealer's information, as well the absence of documentation of Plaintiff's right to actually purchase a 2005 Ford GT, indicates a lack of intent on the part of the parties to be fully bound by the Assignment. They argue further that, even if there had been a binding contract, Plaintiff's failure to deliver the car by July 6, 2005, as orally agreed by the parties, relieved Defendants of any obligation to conclude the agreement.

Plaintiff, pointing out that the express language of the Assignment makes no

indication that the parties contemplated executing a more formal contract as a condition of the transaction, argues that his cause of action based on the Assignment is viable. He further asserts that, because paragraph eight of the Assignment explicitly provided that the entire agreement was contained within the four corners of that document, by signing the document, Defendants unequivocally accepted the terms of the Assignment and are bound by them, and that Defendants' Counterclaim, which is premised on Plaintiff's failure to meet a deadline that was not incorporated into the written agreement, should be dismissed.

In an integrated agreement "[w]here the language employed . . . is ambiguous or equivocal, the parties may submit parol evidence concerning the facts and surrounding the making of the agreement in order to demonstrate the intent of the parties." Ralli v. Tavern on the Green, 566 F. Supp. 329, 331 (S.D.N.Y. 1983); Adler & Shaykin v. Wachner, 721 F. Supp. 472, 479 (S.D.N.Y. 1988). Such parol evidence shall not be admitted, however, if offered to contradict the terms of the written agreement. Farmer v. Arabian American Oil Co., 277 F.2d 46, 49 (2d Cir. 1960). Traditionally, the analysis as to whether an agreement's terms are ambiguous is conducted based on the provision that are within the four corners of that document. See Adler & Shaykin v. Wachner, 721 F. Supp. at 479. Here, considering that the Assignment details only the make, model, year and sales price of the very expensive subject automobile, ambiguity exists as to significant features of the car and details of the transaction such as the source of the vehicle and the timing of the contemplated transaction. An alleged oral agreement as to the car's color, features, origin and date of delivery would not seem to contradict the express terms of the Assignment, nor would a term setting a deadline for delivery. Accordingly, and despite the paragraph eight integration clause, this Court may consider Defendants' proffered evidence of a

delivery term. Because a reasonable fact finder could conclude, based on the evidence proffered by Defendants, that the parties to the Assignment had agreed on a July 6, 2005 performance deadline, and because Plaintiff denies that any such agreement was made, material issues of fact preclude judgment in Plaintiff's favor with respect to the Counterclaim.

Defendants' motion to dismiss Plaintiff's claim against Andy's based on the Assignment must also be denied. New York law requires four essential elements to be met in order to prevail in a breach of contract action: (1) formation of a contract, (2) performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. See Coastal Aviation, Inc. v. Commander Aircraft Co., 937 F.Supp. 1051, 1060 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (2d Cir. 1997).

Defendants' argument that the Assignment constituted an unenforceable agreement to agree goes to the issue of formation, which is the first prong of the breach of contract cause of action. Material issues of fact preclude judgment in Defendants' favor. Indeed, their own assertion of a counterclaim premised on breach of the Assignment indicates that a reasonable fact finder could conclude that the parties had entered into a binding agreement concerning the subject matter of the Assignment. Accordingly, Defendants' motion for summary judgment dismissing the Complaint is denied.

Motion for Partial Summary Judgment Striking the Assignment's Liquidated Damages Provision

Defendants, arguing that the $75,080 payment called for by paragraph 11 of the Assignment in the event of the buyer's breach of that agreement is disproportionate to the $2,000 payment the Assignment would have entitled Plaintiff to receive had there been no breach, seek partial summary judgment precluding Plaintiff from claiming damages under that provision of the

Assignment. They seek an order limiting Plaintiff's potential damages claims to direct damages and lost profits.

A liquidated damages clause generally is enforceable so long as it does not amount to a penal forfeiture. Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc., 415 N.Y.S.2d 800, 389 N.E.2d 113, 116 (N.Y. 1979). The purpose of such a provision is to provide just compensation for loss in situations where it is difficult or impossible to calculate the amount of actual damages. Truck Rent-A-Center, Inc. v. Puritan Farms 2d, Inc., 393 N.Y.S.2d 365, 361 N.E.2d 1015, 1018 (N.Y. 1977). "A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion," and thus is unenforceable. Id. The burden rests with the party challenging the validity of the liquidated damages clause to show either (1) that the damages were readily acertainable at the time of contracting, or (2) that they are "conspicuously disproportionate to [the] foreseeable losses." JMD Holding Corp. v. Congress Financial Corp., 795 N.Y.S.2d 502, 828 N.E.2d 604, 609 (N.Y. 2005).

Plaintiff argues that, at the time of contracting, his damages were incapable of precise estimation and proffers that the potential losses contemplated included the potential for profit on the price spread of the vehicle, damage to Plaintiff's relationship with the dealer from which he was to procure the car, and other matters. Despite Defendant's claims of disproportionality, on this record, it cannot be said that no reasonable fact finder could conclude that the payment called for by paragraph 11 was unreasonable in relation to the loss that could be anticipated in the event of breach. Accordingly, Defendants' application for partial summary judgment on the issue of liquidated damages is denied.

Personal Liability Claim as Against Stephens

Defendants move for summary judgment in Stephens' favor dismissing Plaintiff's claims as against him personally, arguing that he executed the Assignment only in his capacity as an officer of Andy's. "[An] agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." Mencher v. Weiss, 114 N.E.2d. 177, 306 N.Y. 1, 4 (N.Y. 1953).

Here there is no dispute that Stephens signed the Assignment "Andy's Car Co. Inc. by George Stephens," thus clearly indicating that he did not intend to be bound in his personal capacity. Plaintiff has proffered no evidence indicative of an intent on Stephens' part to be bound personally to the Assignment. Accordingly, Stephens is entitled as a matter of law to judgment dismissing the Complaint as against him, and Defendants' cross-motion is granted to that extent.

## CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment dismissing the Complaint in its entirety and for partial summary judgment striking the Assignment's liquidated damages provision are denied, as is Plaintiff's motion for summary judgment dismissing the Counterclaim. Defendants' motion to dismiss the Complaint as against Stephens in his personal capacity, however, is granted.

The parties are directed to meet with Judge Ellis, to whom this case has been assigned for general pre-trial management, to discuss settlement and any other remaining pre-trial management issues.

SO ORDERED.

Dated: New York, New York
March 13, 2007

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copies mailed 3/13/07 to cansl + MJ