**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RENZER BELL,** | : |
| | : |
| Plaintiff, | :  **MEMORANDUM** |
| | :  **OPINION AND ORDER** |
| - against - | : |
| | :  **05 Civ. 7182 (LTS) (RLE)** |
| **ANDY'S CAR COMPANY, INC.,** | : |
| | : |
| Defendant. | : |

**RONALD L. ELLIS, United States Magistrate Judge:**

On February 2, 2009, this Court ordered *pro se* Plaintiff Bell to show cause why his case

should not be dismissed for failure to prosecute by impeding the discovery process. This order

was precipitated by Defendant's motion for sanctions pursuant to Federal Rule 37(b)(2)(A) for

Bell's failure to file adequate answers in response to the Court's order that he answer outstanding

deposition questions. The approximately twenty-four questions at issue had been identified by

Defendant and contained in a document titled "Schedule A." Also in Schedule A is a category

marked as "Evasive Answers" in which Defendant presents deposition testimony wherein it

alleges Bell deliberately responded in an evasive and indirect manner. Defendant contends that

Bell "has persisted in his practice of either refusing to provide answers and/or to provide evasive

and incomplete answers to the defendant's deposition questions, . . . ." (Affirmation in Supp. of

Def.'s Notice of Mot. for Sanctions Pursuant to Fed. R. Civ. P. 37, Jeffrey M. Rosenblum, Dec.

15, 2008, ¶ 3.)

By affidavit dated February 13, 2009, Bell responds to this Court's order to show cause

and seeks clarification. Bell asserts that he "understood [his] obligation to be to answer the [20-

25 unanswered deposition] questions objected to and identified by the defendant's counsel on or

around September 9, 2008[,]" and that he believed his production "was consistent with the spirit and letter of the instructions of this Court . . . ." (Bell Decl., Feb. 13, 2009, ¶¶ 11, 12.)

As an initial matter, the Court notes that the provision for deposition upon written questions was designed to minimize expense in the completion of discovery. Because the Defendant would not have an opportunity to ask follow-up questions, it was imperative that Bell provide answers which reasonably addressed the context in which the questions were posed. Therefore, Bell could not discharge his obligations by one word answers or partial responses. The following non-exhaustive list tracks particular deposition questions and Bell's answers that Defendant found problematic:

1) **Question:** Were there other members beside yourself of Tam-Rin Privileges, L.L.C.?[1] (Dep. Tr. at 41:21-25.)

**Bell's Answer:** I do not recall if there were other members of Tam-Rin Privileges, L.L.C. beside myself. (Pl.'s Answers to Unanswered Deposition Questions ("Pl.'s Ans."), Nov. 19, 2008 at 1.)

**Problem:** This answer fails to present any useful information. While it technically answers the question, Defendant is left with no way to ascertain what individual or individuals shared in proceeds directed to Tam-Rin Privileges, L.L.C.

2) **Question:** Are you presently in business, the business of acting as a broker in the . . . purchase and sale of cars? **A:** I don't, I don't know. **Q:** You don't know. . . . Do you earn your

---

[1]According to Defendant "Tam-Rin Privileges, L.L.C. was the entity that received a commission of $9,097.50 due [Bell] in conjunction with the sale of a 2005 Ford GT by Mike Davison Ford to L.O.R. Enterprises, L.L.C. that was consummated on July 5, 2005. After this sale, [Bell] no longer had a 2005 Ford GT for delivery to the defendant." (Schedule A at 1 n.1.)

own living, Mr. Bell? (Dep. Tr. at 52:6-18.)

**Bell's Answer:** In a manner of speaking, yes. (Pl.'s Ans. at 2.)

**Problem:** This answer provides no useful information. Bell does not explain the rather dubious phrase "in a manner of speaking," which appears to be designed to annoy rather than enlighten.

**3) Question:** Now, do you have any cases presently pending in any other state beside New York? (Dep. Tr. at 83:1-6.)

**Bell's Answer:** Yes. (Pl.'s Ans. at 2.)

**Problem:** It is clear from the context of the deposition that Defendant was seeking to explore what other cases Bell may have brought which could be relevant to the claims in this case. While the single word "yes" may technically answer the query, the Court finds it fails to address the "spirit of . . . the instructions of this Court."

**4) Question:** [Following a series of objected-to and evasively or unanswered questions about Bell's involvement in other litigation, Defendant asked:] Do any of those cases involve your claim for commissions in conjunction with the sale, purchase and sale of a motor vehicle? (Dep. Tr. at 84:9-14.)

**Bell's Answer:** Not to my knowledge. (Pl.'s Ans. at 2.)

**Problem:** This response is not informative. Indeed, it is less useful than a simple "Yes" or "No."

**5) Question:** What do you say to reserve an automobile? I mean we now have got down where you have to reserve it orally and you're the one that does it. What do you say? (Dep. Tr. at 167:24-168:8.)

3

**Bell's Answer:** It depends on the circumstances and the relationship with the car dealer/seller. (Pl.'s Ans. at 3.)

**Problem:** While Bell's answer is technically accurate, its brevity and lack of any substantive information leaves the Defendant with no useful information. Ideally, Bell could have given examples. He might even have noted what "circumstances" would cause what responses. He failed to do this.

**6) Question:** What 2005 Ford GT automobiles did you have available when you talked to Mr. Applestein? . . . In each and every conversation you had with Mr. Applestein? (Dep. Tr. at 197:21-198:2.)

**Bell's Answer:** Without knowing the date and time of the alleged conversation with Mr. Applestein, I am unable to answer this question given that I spoke to Mr. Applestein several months or several years before the transaction which is the subject matter of this litigation. (Pl.'s Ans. at 3.)

**Problem:** This answer fails to address the spirit of the question. Even if Bell had multiple conversations, he was the only one in a position to know the date and time of such conversations.

**7) Question:** No, I want to know what they [plaintiff's damages] consist of. You've got to be able to prove what your damages consist of. **A:** I don't have to. . . . I don't have to prove what my damages are. . . . **Q:** Well, tell me what your calculation [of plaintiff's damages] is? **A:** I'm not telling you that. I object to that question. (Dep. Tr. at 263:11-21, 266:6-9.)

**Bell's Answer:** The damages agreed to by the parties to the contract and as pled in the Plaintiff's Complaint represent an estimate of the damages likely to be sustained by the Plaintiff in the event of the breach/default/repudiation and allowed to be claimed pursuant to the Uniform

4

Commercial Code . . . . (Pl.'s Ans. at 3.)

**Problem:** This should have been a simple query. Defendant is seeking to have Bell

indicate what elements are contained in his calculation of damages and how such damages may

be evaluated. The answer simply ignores the intent of the question.

## CONCLUSION

While Bell asks for clarification, it has become clear to the Court that further

communication by written correspondence will only delay this matter and that the Parties are

likely to have ongoing disputes about any question and the follow-up to such question.

Based on the foregoing,

**IT IS HEREBY ORDERED** that Bell will arrange to be available for further deposition

on or before **May 18, 2009.** Such deposition shall take place in this Court, 500 Pearl Street, in a

room to be arranged by Defendant.

**SO ORDERED this 14th day of April 2009**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

5